Good morning, everyone. I don't know if you all noticed, but in case you haven't, they are filming right next to our building an Avengers movie. Yesterday, we were greeted with car burnings, crash sounds, other things. This is not our court's doing. The city of Atlanta has authorized this. I just wanted to make sure that if you hear any odd noises, that's probably what it's going to be. I do apologize. I don't know if there are any difficulties getting into the building with all that going on. I hope not. I just wanted to advise you of that. Also, Judge Fahy and I are very pleased to have sitting with us today Judge Richard Goldberg. As some of you may know, we have a very busy court. We depend greatly on the services of visiting judges. Judge Goldberg has certainly given us a lot of service over the years. He is a senior judge in the Court of International Trade in New York. He's a native of North Dakota. He sits with us quite a bit and is very generous with his time. Judge Goldberg, we're so appreciative to have you back again. He's a regular. All right. We'll begin with our first case, and I call the case of David Charles Sussman v. Sergeant Trevor Hampton, Assistant Warden Bone. Mr. Jones? Good morning. May it please the Court, my name is Peter Jones, and I'm here on behalf of the appellant David Charles Sussman. The primary question presented by this appeal is whether the district court erred in dismissing Mr. Sussman's 1983 claims under the PLRA's three-strikes rule based on a retroactive application of Coleman. Actually, it's four, isn't it? Excuse me, Your Honor? It's four strikes in his case. He did have four prior lawsuits. Two of those lawsuits were dismissed on an enumerated ground prior to the filing of this incident litigation. Two of those lawsuits were on appeal at the time he filed this incident litigation. Those were eventually dismissed as well. But at the time Mr. Sussman filed the incident appeal, he had two strikes on enumerated grounds, and under the then-majority view of the rule, his two strikes or his two dismissals that were pending appeal did not count as strikes. Defendants rely on the Supreme Court's opinion in Harper for the proposition that the retroactive application of Coleman is required here. I believe that reliance is misplaced. I think it's important to acknowledge up front that Harper has some broad language, language to the effect that once the court that announces a rule applies it to the parties before it, lower courts are required to give full retroactive effect to all cases still open on direct or review. Respectfully, I believe that this language is imprecise and can be read to overstate the principle for which Harper truly stands. The question is not whether the court that announces the rule applies it to the parties before it, but whether it retroactively applies it to the parties before it. And that's consistent with the underlying reasoning of Harper that we should treat similarly situated litigants the same. It's uncontroversial that once the court applies a rule of law retroactively, it should be applied to all other folks retroactively. But it's an open question where the court announcing the rule does not apply it retroactively. And that's why I think this court in its en banc decision in Glazner got it exactly right when Judge Dubina wrote that Harper merely reiterated the rule that once a court retroactively applies a newly announced rule in one case, the rule must be applied retroactively to all pending cases. And there's strong support for this reading of Harper in the language of the opinion itself. But even without Harper, you've got the general principles of Chevron Oil, which do not seem to me overall to favor you. Absolutely, Your Honor. If Harper doesn't control, then we turn to Chevron Oil. The district court was correct in applying the Chevron Oil test. And yes, Your Honor, the district court concluded that the Chevron Oil factors do not or actually weigh in favor of retroactive application. We disagree. The district court found that. Tell me why the district court was wrong, because it's just three factors and it seems to me at least on two, you're not doing so well, and on one, it's not clear you're favored either. So why was the district court wrong? Yes, Your Honor. We believe the first factor weighs in favor of prospective application only, because the court's opinion in Coleman did address an issue of first impression, both in the Supreme Court and for the Eleventh Circuit. This court had not directly addressed the issue. And defendants do not appear to dispute that. So the only argument is whether that decision was clearly foreshadowed. And we would submit that the district court— Leave aside the first—let's leave aside the first factor. Second is retroactive application of the new principle would further or retard the purpose of the effect of the rule in question. You lose on that one, don't you? I don't believe so, Your Honor. There have been a number of articulations of the purpose and effect of this rule. Well, let me tell you, I mean, the whole point of this rule are the prisoners that file frivolous litigation are tying up the court system and the prisons. So you've got a guy that's got four, two are on appeal, and we now know that the district court erred if it didn't know what the Supreme Court was going to do. It should have counted all four. Why would you let this fellow stay in court when we now know for sure by the Supreme Court he's lacking or he has more strikes even than he needs for the rule? Or at least require him to pay, pay a filing fee. Well, absolutely, Your Honor, and that is an issue that we address also in this brief. We believe that the way in which the district court disposed of the case, it abused his discretion in doing so and effectively dismissed his substantive claims of prejudice without allowing him an opportunity, or at least considering whether a lesser sanction would have been appropriate. Well, I know your court appointed, so I'm not picking on you, but do we normally reverse a district court when they fail to do something they're not asked to do? I apologize, Judge Fahey, I'm not sure I follow your question, but I think this court- I know you argued it, but did he make that request to the district judge? Let me pay the filing fee. Yes, Your Honor, and defendants have raised the issue of waiver below, and that's fair. This court typically does not, but it has the discretion to do so. And we think in this case the equities would weigh in favor of that. As you know, not only was my client operating pro se below, but also he was not given the defendant's motion to dismiss provided by the local rules. On August 24th, defendants filed their motion to dismiss. Before we get back to that, Mike, let's assume, I'm not sure though, at any rate, I'm interested in his reliance interest and what his justifiable reliance would be. Let's assume that when he asked to go IFP, the magistrate judge didn't allow him to go temporarily. The magistrate judge says, no, I'm sorry, I'm going with the minority rule, you've got all these cases, I don't care if they're on appeal or not. You're out. And let's say then that later on, you know, the district court went along with that and we affirmed that, ignore whether there's a Coleman or not, we affirmed that. We would never in that instance say, well, gee, you guessed wrong, I guess you get to pay your filing fee. We have no case law. In fact, our case law, does it not, indicates that when you make a mistake in asking for IFP and you arguably have three strikes, you are out, literally. So what is his reliance? What basis does he have to rely on the fact that he might lose or win? Well, if I understand your question correctly, I think the difference here is the equities. In a typical IFP case, it's decided at the commencement of the suit. When a prisoner files his complaint, he files a motion for IFP status. And if it's denied, as in your example, it's denied immediately, within a few days or weeks, as I understand it. And so that dismissal would occur before he is taking the time to invest his time, energy, and effort to litigate, in the words of the district court below, diligently litigate his claims, his substantive claims, for over two years. But the magistrate judge said in his order allowing the IFP that the magistrate judge assumed because the dismissals were on appeal, they didn't count. But he also said if the dismissals are affirmed on appeal, that your client would soon be barred from the suit. So he knew going forward, I better hope that nothing happens that counts these dismissals on appeal. And he rolled the dice and he lost. Well, Your Honor, yes, Your Honor, that is what the magistrate judge White said. However, I think that his understanding of the law was incorrect. And perhaps because he wasn't directly addressing that issue, he may not have looked at it closely. But the law in this circuit is that a strike accrued after the filing of the instant action does not work to revoke IFP status. And we've cited a few of those cases in our brief. So I don't think it's correct if Judge White was suggesting that had his appeal been dismissed as frivolous, it would have then revoked his status. The law in this circuit has been, and I believe still is, that an accrued strike post-filing does not work to revoke IFP status. Getting back to your question about the second factor of the Chevron oil analysis, whether retroactive application will further or hinder the operation of the rule, there have been various articulations of what the purpose of the rule is, conserve judicial resources, prevent abusive prisoner litigation. But everyone seems to agree that the way it was intended to work was to provide an economic incentive to prisoner litigants to, quote, stop and think before they filed a lawsuit, to understand that there were consequences. Well, there is no reasonable argument that the retroactive application of Coleman will cause one prisoner litigant to stop and think before he files a lawsuit. All of the litigations to which retroactive application of Coleman could possibly apply were filed prior to May 18, 2015. Mr. Sussman does not dispute that the Coleman rule applies definitively to any cases filed after that. And it's important to consider that this is not going to open the floodgates of litigation. As I mentioned, the only cases to which this could possibly apply were filed prior to May 18, 2015 and are still pending today. The universe of cases is fixed and cannot grow. What do you think about the argument of the defendant that he swore under oath, your client, that he was indigent and that's necessarily needed an IFP status and now suddenly he loses and he's discovered some money? They argue that that seems to disfavor your client's position here. Yes, Your Honor. I certainly think it's possible that a litigant faced with the dismissal of his substantive claims, claims that he has litigated for two years and believes to have merit, could find means to acquire the funds necessary to pay the filing fee consistent with having represented to the court two years, more than two years earlier, that at the time he didn't currently have the funds necessary. It seems to me that there are certainly ways he could borrow the money, acquire the funds through other means without necessarily perjuring himself with an affidavit or declaration he signed in 2013. It might be difficult to do so and I don't know if he would be able to do so, but I certainly think it's possible. I don't think the court should dismiss this case based on the assumption that he can't. I see my time has remained. I did want to speak about the third factor of the Chevron Oil. Why don't you touch on that briefly so opposing counsel can respond and then you can talk about it more when you come back. Yes, Your Honor. Just briefly, in the few seconds I have, we submit it's just simply unfair to tell a litigant who applied for IFP status properly, was granted IFP status, litigated his claims for two years, and again, in the words of the district court, diligently litigated his claims, to tell them you never should have been able to start in the first place. I see my time is up. Thank you. Thank you. Good morning. May it please the court, Shane Weaver with the Attorney General's Office for the defendant appellees Trevor Hampton and Marie Bone. Court's dismissal of this action should be affirmed first because Coleman v. Tolleson had to be applied retroactively. Much of the court's order and the appellant's brief and some of the court's questions There's some question about that Harper should have been used rather than Coleman. Would you address that issue? Yes, Your Honor. The Coleman Coleman, of course, was the Supreme Court, the newer 2015, I think it was. Yeah. Go ahead. Harper has to apply because in Harper, the Supreme Court found that when it applies a new rule of law to the parties before it, that is binding on all other courts, including for those cases before and after that decision, all cases that were open on review during that time. And there is no ability to decide that. This circuit has sort of carved out a small exception, I guess you could say, that it's found that Chevron oil survives to a very limited extent, which is only when this court is the one announcing the new rule of law. Now, that's not the case here. It was the Supreme Court announcing a new rule of law in Coleman, which means that the Chevron oil test has been effectively overruled. The Supreme Court has said that a couple of times, including in one of the footnotes in a case that plaintiff has cited, Landgraf. It's also mentioned in Reynoldsville Casket that Reynoldsville Casket Company versus Hive that it's been overruled to the extent that it allows selective prospectivity. Again, the only exception would be that this court has found it survives only in limited circumstances that have no application here. So again, while much of the court's and the appellant's attention has been . . . Oh, and my hypothetical to opposing counsel was if we had . . . if there had been no Coleman and the magistrate judge had ruled differently, denied IFP, somehow it finds its way to us on appeal and we had essentially adopted the Coleman rule that a dismissal can count even if it's on appeal, then you're saying he might have a better argument if it was our court that announced that rule than it was the Supreme Court. Absolutely. And under Chevron Oil, that would in fact be his own . . . under Harper, that would in fact be his only chance of arguing for Chevron Oil. And this court has made that limitation clear in Glasner versus Glasner and McKinney versus Pate where it talks about Chevron Oil existing only in those situations where this court is applying the new rule in the first instance, which was not the case. So let's assume you're right and let's assume . . . do you all want to ask any more about retroactivity? Assuming that you're right on the retroactivity issue, it seems almost equally significant to a plaintiff is the fact that he would like to continue on with his lawsuit. He would like to be able now to pay the filing fee. And what is your response as to how one would allow him to even do that? The statute appears to have run and whether or not he should be allowed to do that. If he's . . . to the extent he's asking for some ability to . . . I guess if he's asking to reverse the dismissal, then he's in effect saying he should be given some undefined alternate means of, I guess, a payment arrangement or leave to pay it. None of that type of framework is anticipated by the PLRA and it's ruled out by this court's precedent in Dupree versus Palmer. First of all, the issue was not raised in the proceedings below. It was not preserved. Appellant, I believe in his reply brief, states that he . . . it was not raised because he did not have the opportunity to do so based on the fact the motion to dismiss was recommended to be granted, I think, only eight days after the motion was filed, which, if true, still does not answer the fact that he did not file any objection . . . he did not . . . well, he filed objections to that report and recommendation, but did not mention the potential for dismissal of prejudice at all. He did not mention the fact that he only had eight days to respond at all. Then after the district court adopted the report and recommendation in full, he also did not move for any kind of a reconsideration or rehearing of that issue. So he did have the opportunity to raise this potential dismissal of prejudice, but chose not to argue it for whatever reasons. Although he is pro se and pro se pleadings must be interpreted liberally, they still . . . a pro se inmate like anyone else still must preserve an issue on appeal. Let's assume he had objected and the issue was right for our consideration. Explain to us why you don't think we should try to accommodate him in the way his counsel asked for. Your Honor, the PLRA does not leave any room for those types of alternate arrangements or leave to amend. It specifically says that the filing fee . . . a three-strike inmate who files a lawsuit must pay the filing fee when the suit is brought. There's not, for example, an exception that an inmate may not maintain the action or may not proceed with action. It's that he may not bring it, which means it cannot be filed without . . . he may not commence an action as an IFP litigant if he has three strikes. The plaintiff would argue, gee, it seems awfully unfair when I thought I was properly before the court. I've spent time, if I'd known, and it seems unfair because of a later decision against me that I don't have a chance to make things right. Well, I guess there's two responses to that, Your Honor. First on a basic level, and although plaintiff and appellate invokes equity and fairness throughout the briefing, this is a situation where an inmate has abused jail . . . I'm sorry, has abused court resources to the point where he's not allowed to proceed IFP anymore. So this is really just the consequences of his own actions that caught up with him. It's sort of a, I guess, in variation on the old axiom that a litigant must do equity to seek equity, and he's not in a position to request some type of an equitable relief or, I guess, whatever it is that he's seeking given his litigation history. Now, the second part of that is that the . . . this court has found that an inmate has no ability to pay the filing fee after the act of filing. It began with that analysis in Vandenberg v. Donaldson, where it first said that the full filing fee must be paid at the time he initiates suit. The court elaborated on that in Dupree v. Palmer, holding that a prisoner cannot simply pay the filing fee after being denied IFP status. He must pay the filing fee at the time he initiates suit. Now, as far as it ending up being a dismissal of prejudice because of that, first, there's not necessarily a sufficient record to establish if, in fact, his claims are barred. So that should be noted if, assuming arguendo, that his claims were time barred. That's really not an issue for the PLRA. Dismissals with prejudice are not an accidental consequence of the PLRA. They're fully anticipated. In the analogous situation of exhaustion for dismissals for failure to exhaust administrative grievances, which is another subsection of PLRA 42-1997EA, this court has found that an inmate cannot file his grievances after commencing the lawsuit. He must do it before, much the same way he must have paid the filing fee at the time he commences the action. Now, in Johnson v. Meadows, this court affirmed a dismissal of prejudice because an inmate, by the time he tried to exhaust his grievances after litigating and they dismissed the case, his claims would have been time barred. And the court specifically found that there must be a possibility of a dismissal of prejudice. That's how the PLRA's enforcement mechanism works. In other words, the inmate would just roll the dice. If I lose, then I can pay the fee anyway. It doesn't matter. I haven't lost anything in the process. Yes, Your Honor. You'd have situations, for example, where an inmate who knows he has no chance of being able to proceed with his action IFP if he files at any time during the statute of limitations could wait until as close to the end of that limitations period as he can so that by the time it comes up for a screening dismissal or a motion to dismiss, he'd be able to say, but if this is dismissed, I would not be able to proceed. I would not be able to refile. So I'm saying inmates would be encouraged to try every time to get to use this mechanism because there'd be no downside if they lost. Absolutely. And the courts have used various terms to describe inmates trying to evade the prospects of the PLRA. In Coleman, it was a reference to the leaky filter whereby inmates were filing actions while their appeals were filed, where the appeal of a third strike was was pending. And I should mention that Dupree v. Palmer itself, although it does not appear to have come up in the briefing or indefinitely not the order, Dupree v. Palmer itself was a dismissal of prejudice. The inmate in that case filed his action two days before his statute of limitations expired and 19 days later, the action was dismissed. So again, it wasn't part of the order, but it just should be noted that it was a dismissal of prejudice. And also the dismissal of prejudice language, that's not, that's besides the exhaustion, the administrative exhaustion section, that's also sometimes appropriate in dismissals for filing false affidavits or otherwise acting maliciously. Now the two lead cases plaintiffs, appellant cites against the dismissal of prejudice are Stevenson, I'm sorry, Hines v. Thomas and Stevenson v. Doe. Hines was unpublished, correct? Yes, Your Honor. They were both, I believe they're both, they had nothing to do with the three strikes rule. Those were dismissals for maliciousness under 1915E. Now 1950E itself includes mandatory shall dismiss language if an action is malicious. So when this court was reviewing those decisions, it was determining if the inmate's action was in fact malicious. It was not a situation where all parties in the court agreed that the inmate had acted maliciously, but is there some way we can get around the statute and not have to dismiss it? Rather, it found that it was not malicious at all, taking it out of that dismissal subsection's ambit entirely. If there's situations where a court has discretion to apply a sanction, such as under Rule 41 or Rule 11 or under its inherent powers, then sure, the court may have more tools at its disposal. It may have the ability to decide a dismissal of prejudice versus dismissal without prejudice, but this is not that situation. This is purely the ministerial application of the three strikes rule, and it's plain language based on the objective fact that he had three strikes. And when the court is interpreting the statute in that type of manner, applying a statute in that type of manner, it does not have discretion to carve out other exceptions or to interpret the rule judicially. That's only for Congress to do. And as I said, if the Congress wanted to create other exceptions, if it wanted to allow inmates to maintain actions, it could have done so. It specifically chose not to. There is only one recognized exception to the requirement of paying the filing fee at the onset of a case, and that is imminent danger, which has nothing to do with this case. It is not alleged and is not a basis for the complaint. So when a court is applying an action ministerially like this, then it has to apply a statute, dismiss the case. There was not under the PLRA and under Dupree versus Palmer a choice of dismissal versus non-dismissal, some other lesser sanction, a payment plan, something else. It was really only a choice of dismissal or no dismissal at all, which neither the PLRA nor Dupree would allow. So for those reasons, on both fronts, the order below should be affirmed. If the court does not have any further questions. Thank you. I've not used all my time, and I thank you for your consideration, Your Honor. Mr. Jones. Thank you, Your Honor. I did want to touch on the issue of retroactivity first and briefly. Defendants are correct in the idea that Harper declared selective prospectivity unconstitutional, but the point is that that's not what's happening here. This is an issue of pure prospectivity, and the reason is because the court in Coleman did not apply the rule of law it announced retroactively to the parties before it. And you can look to Justice O'Connor's dissent where she points out that any language that suggests that once a court applies a rule of law, that rule of law must be given full retroactive effect in all pending cases on open review is dicta. The real question is whether the court that announced the rule applied it retroactively, and that's what the majority opinion does. Here, the court in Coleman did not apply the rule retroactively. Unlike Mr. Sussman, Mr. Coleman had his motion for IFP status denied based on the same interpretation of the three strikes rule that was eventually adopted by the Supreme Court. That denial was affirmed by the Sixth Circuit and then affirmed again by the Supreme Court. And this reading of Harper is consistent with the underlying reasoning, whether we treat similarly situated litigants the same. Mr. Sussman and Mr. Coleman are not similarly situated, at least as it respects retroactive application. Because of that, as this court noted in Glazer, and as this court has noted even more recently, the Chevron oil analysis has a role to play in the retroactivity analysis, and it should have that role to play here, where the court who announced the rule did not apply it retroactively to the parties before it. Addressing the issue of whether the district court disposed of this case improperly, what we're asking for here, Your Honors, is to vacate the district court's order, send it back, and have them consider whether the drastic remedy that was imposed on Mr. Sussman is appropriate under the circumstances. On what ground would we vacate? Let's assume we think the district court is absolutely right and applies retroactively, so we're not going to reverse her for that. We're affirming the dismissal. If we went back and said, well, you should dismiss without prejudice, that doesn't get you very far, statute of limitations, so what are we supposed to say? She ruled correctly. Yes, Your Honor, absolutely. Assuming the retroactivity argument does not succeed. I encourage the court to look at the cases of Hines and Stevenson. The court addressed similar circumstances there and found, although dismissal was warranted, the drastic remedy which was effectively imposed, dismissal with prejudice, was not, and that the court should have considered whether a lesser sanction would have been appropriate under the circumstances. We're still looking for that sanction. Absolutely. I think an appropriate sanction here, and I agree, this is unusual. I mean, we're not even talking about sanctions. She's just saying, you don't have it. You had too many strikes. I'm not sanctioning you. You're just, you're done. That's not exactly a sanction she was applying. Agreed, Your Honor. Yes, Your Honor. I think the remedy, the appropriate remedy here, would have been to give Mr. Sussman 14 days to pay the filing fee. Issue an order that, and the idea that this never happens in the IFP status, I don't think is exactly correct. In fact, in this case, the magistrate judge denied his motion for IFP status without prejudice and allowed him to refile. He didn't dismiss the complaint and force him to refile the complaint. He simply denied his motion for IFP status and said, refile with a more detailed financial affidavit. So technically, under the rules, Mr. Sussman didn't comply with what was necessary to obtain IFP status, yet the magistrate judge— One kind of issue, that every time a prisoner who really should, really is subject to the three strikes rule has a clever argument, a new argument to get through, he'll try. He'll run with that as long as he can. And when he loses, he says, well, what the heck? You know, I get to pay the filing fee. He's concerned about that this kind of rule would have, would really be inconsistent with the spirit of this statute, which is to try to discourage, not to have everybody file and have courts knock them out, but have them at the outset not filing these suits when they know they already have three strikes. What's your response to that? Yeah, I see my time's up. May I answer your question? I think the response is I'm not sure where the great benefit comes. All we're asking for here is 14 days to pay the filing fee. I don't see the real benefit to the prisoner litigant to get an extra 14 days of his lawsuit pending, which at the end of which he's forced to actually pay the filing fee. This doesn't seem to me to be a flood of litigation that the court should be concerned about. And Mr. Jones, I believe you were appointed by us. Is that correct? Yes, Your Honor. You have done an outstanding job for your client, and I know you're a busy lawyer. I see the firm you work with, and I'm sure this took a lot of time out of your busy day, and we really appreciate your service. Well, it's always an honor to be here, Your Honor. Thank you very much for your consideration. Thank you. All right. Call the second case.